UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**CULI-SERVICES, INC., et al.,**<br><br>Defendants. | Civil Action 04-00570 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Federal Insurance Company ("Federal") brings this action against Culi-Services, Inc. and Culi-Temps, Inc. (collectively, "Culi") alleging breach of contract. Before the court is Federal's motion for summary judgment [#18]. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that Federal's motion must be granted in part and denied in part.

**I.  FACTUAL BACKGROUND**

On October 4, 2000, Federal issued a Workers Compensation and Employers Liability Insurance Policy ("Policy"), insuring Culi from October 1, 2000 until October 1, 2001. The Policy was thereafter renewed through October 1, 2002. Under the terms of the Policy, Federal agreed to provide workers compensation and employers liability insurance to Culi in return for "the payment of premiums." Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), Ex. A, at PL000120. Part Five of the Policy outlines the terms pertaining to the payment of premiums and requires Culi to "pay all premiums when due." *Id.* at PL000125. The parties agreed that Culi would make premium payments in installments, in accordance with a schedule agreed to by the parties.

In addition to issuing the Policy, Federal also entered into a Reimbursement, Indemnification and Security Agreement ("Agreement") with Culi, which also became effective on October 1, 2000. Pursuant to the Agreement, Culi agreed to "reimburse and pay [Federal] for all sums [Federal] pays within the Policy's deductible(s) up to the Aggregate Deductible: (a) as indemnity payments . . . for claims against Culi under the Policy and (b) as allocated loss adjustment expenses ('ALAE')." Pl.'s Mot., Ex. D, at 1. In addition, Culi agreed to reimburse Federal for "claims adjustment overhead expenses that cannot be directly attributed to a specific claim ('Unallocated Loss Adjustment Expenses' or 'ULAE') under the Policy." *Id.* at 2. Finally, Culi also agreed to pay "all attorney's fees, court costs and other expenses incurred by [Federal] in enforcing the terms of this Agreement." *Id.*

To facilitate reimbursement of deductible payments, Section 2 of the Agreement required Culi to deposit an initial sum of $19,500.00 into a "Working Fund." This amount was estimated to cover the reimbursements for a two-month period. Culi further agreed to replenish the Working Fund upon notice by Federal that the Fund had fallen below $5,000.00 and to reimburse Federal for any amounts paid by Federal in excess of the Working Fund.

Section 3 of the Agreement obligated Culi to maintain a Letter of Credit ("LOC") as security for the prompt performance of its obligations under the Agreement. Pursuant to the Agreement, the initial amount of the LOC was to be $78,000.00 and would automatically increase, in accordance with a pre-set schedule, to $312,000 by July 1, 2001. The Agreement entitled Federal to draw down on the LOC if Culi failed either to replenish the Working Fund or to reimburse Federal for amounts paid by Federal in excess of the Working Fund.

The parties further agreed that, "notwithstanding the cancellation, nonrenewal, or expiration of the Policy, Culi shall continue to reimburse [Federal], maintain the LOC required by Section 3 and maintain the Working Fund required by Section 2 of this Agreement until such time, as in the sole opinion of [Federal]," all reimbursements had been paid and all claims arising under the Policy had been closed. *Id.* at 3.

On November 13, 2000, in accordance with the terms of the Agreement, Culi deposited its initial payment to the Working Fund and posted the initial LOC in the amount of $78,000.00. The LOC, however, did not contain the automatic increase provisions set forth in the Agreement. Rather, the parties amended the Agreement and Federal agreed to accept the remaining $234,000 in cash in lieu of an increase in the LOC ("the Collateral Fund").[1]  Thereafter, Federal made payments on the claims against Culi, as required under the Policy, and drew down from the Working Fund in order to make those payments, as expected under the Agreement. Federal sent monthly invoices to Culi, notifying them of the amount that had been drawn from the Working Fund and the total amount of reimbursement due to Federal.

At some point prior to October 2001, Culi stopped making required premium payments. Thereafter, Federal cancelled the Policy, effective November 27, 2001.[2]  Despite the cancellation of the Policy, Culi was still obligated to reimburse Federal and maintain the LOC until all reimbursements had been paid and all claims arising under the Policy had been closed.

---

[1] While Culi never formally executed this amendment, it did act in compliance therewith by posting the $234,000.00 to Federal, who deposited it into an interest bearing account.

[2] Auditors later determined that Culi had failed to pay a total of $134,544.60 in premium payments. The audits indicate that the total unpaid amount included $88,009 of unpaid premium payments for the 2000-2001 policy period and a pro-rated amount of $65,116 for the 2001-2002 policy period.

In April 2002, having depleted the Working Fund, Federal began withdrawing from the Collateral Fund.  During April and July 2002, a total of $238,428.95 was withdrawn, at which point the Collateral Fund was depleted and closed.  Finally, in July 2003, due to the depletion of both the Working Fund and the Collateral Fund, Federal was forced to draw down from the LOC in the amount of $78,000.00.

In April 2004, Federal instituted this action against Culi for breach of contract.

## II.  DISCUSSION

In support of its motion for summary judgment,[3] Federal provides the court with numerous exhibits and declarations extensively documenting the basis for its claims.  Federal contends that the undisputed evidence establishes that Culi owes $241,701.94 in unpaid deductible reimbursements, $45,000.00 in estimated pending deductible reimbursements, and $134,544.60 in unpaid premiums for the period prior to the cancellation of the Policy.  Additionally, Federal seeks reimbursement of all attorney's fees and costs incurred in enforcing the Agreement, totaling $37,793 as of the date of the filing of Federal's motion.

---

[3] Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  The non-moving party's opposition must consist of more than mere allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  FED R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable [fact finder] to find" in its favor, *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987), and accordingly may not rely solely on mere conclusory allegations.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249–50.

In opposition, Culi presents a five-page opposition with one attachment, a two-page declaration from the president of Culi, David Schek.[4]  Culi's opposition to summary judgment focuses exclusively on Federal's claims for reimbursement of its deductible payments and makes no mention of Federal's claims to unpaid premiums and attorney's fees.

**A. Unpaid Deductible Reimbursements**

Federal presents credible evidence to establish that it advanced $241,701.94 on behalf of Culi for indemnity payments, ALAE, and ULAE under the Policy,[5] which Culi is required to reimburse under the Agreement.  Culi contends that Federal is not entitled to reimbursement of

---

[4] Notably, Culi's opposition fails to include a statement setting forth the material facts as to which Culi contends are genuinely disputed.  Local Rule 56.1, in relevant part, provides:
> An opposition to [summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied upon to support the statement. . . .  In determining a motion for summary judgment, the court may assume the facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

LCvR 56.1.
   The purpose of this rule is to prevent this court from having to "sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [an] analysis and determination of what may, or may not, be a genuine issue of material disputed fact." *Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002).  Rather, the rule "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996).
   Here, Culi fails to comply with the rule and has placed an unwelcome burden on the court.  Nonetheless, the court opts not to deem the undisputed facts in Federal's statement as conceded and instead will base its ruling on a careful review of the record.

[5] This evidence includes a declaration by Celia Iovine, the Contracts and Collateral Services Manager for Federal's account with Culi, as well as a chart identifying each and every invoice issued to Culi for these payments and the amounts paid by Culi on these invoices.  Federal also submits samples of the detailed invoices and backup information underlying the chart, which identify the claimant, date of loss, and the specific amounts paid as indemnity, ALAE, and ULAE for each claim.

the claims it paid, arguing that the Agreement should be interpreted to require Federal to establish that "the claims it says it paid were proper claims or that the claims were the lawful obligations of Culi." Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Opp'n"), at 2. According to Culi, New Jersey law, which governs the interpretation of the Agreement, requires Federal to establish the propriety of the claims it paid out before it is entitled to reimbursements.[6] Because, according to Culi, Federal has failed to meet this burden, this court should deny Federal's motion for summary judgment. The court disagrees.

First, the Policy unambiguously authorizes Federal to make payments on claims against Culi as it sees fit, without prior approval or consent by Culi. Specifically, the Policy states that Federal has the "right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance" as well as the "right to investigate and settle these claims, proceedings or suits." Pl.'s Ex. A, at PL000120. In *American Home Assurance, Co. v. Hermann's Warehouse Corp.*, 563 A.2d 444, 448 (N.J. 1989), the Supreme Court of New Jersey held that a policy including similar language demonstrated "the unmistakable exclusive power of the insurer to control settlement." The court also noted that, when a liability policy contains a deductible clause along with a clause authorizing the "unfettered right to settle," as is the case here, the "insured has bargained away whatever rights might otherwise be created by what might be perceived as a conflict between the insurer and insured." *Id.*

---

[6] Culi suggests that this interpretation is required because contracts of indemnity "are strictly construed . . . against the indemnitee" in the state of New Jersey. Pl.'s Opp'n at 2–3 (citing *Mantilla v. NC Mall Assocs.*, 770 A.2d 1144, 1151 (N.J. 2001)). Contracts of indemnification are only to be strictly construed against the indemnitee, however, "*when the meaning of the clause is ambiguous.*" *Mantilla*, 770 A.2d at 1151 (emphasis added). Because the Agreement is unambiguous, the rule of construction discussed in *Mantilla* is inapposite.

Furthermore, contrary to Culi's argument, New Jersey case law indicates that it is Culi who bears the burden of showing that there has been some *impropriety* in the payment by Federal of Culi's claims, not the other way around. "Once [an] insurer has shown there is no dispute that it in fact has paid the settlements, the burden shifts to the insured to make *some* showing of the carrier's negligence in its claims handling." *Liberty Mut. Ins. Co. v. President Container, Inc.*, 687 A.2d 760, 764 (N.J. Sup. Ct. App. Div. 1997) (emphasis in original); *cf. American Home*, 563 A.2d at 448 (suggesting that when the insured seeks to attack the good faith of insurer, the insured has the burden of presenting some evidence of bad faith). Under this precedent, requiring Federal to offer specific proof of its good faith handling of each and every claim made against Culi during the period of coverage, in the absence of any evidence of bad faith in its payments, "would abuse both the parties and the judicial system." *Liberty Mutual*, 687 A.2d at 764.[7]

Here, Culi's inability to point to a single instance of improper claim payment by Federal, despite extensive discovery, both undermines the sincerity of its suspicion and fails to cast doubt on Federal's claim for reimbursement . As such, Culi has failed to meet its burden, pursuant to New Jersey law, to establish "any instance of unreasonableness with which to cast sufficient doubt upon [Federal's] claim handling." *Id.* Therefore, the court concludes that the undisputed evidence establishes that Federal properly made $241,701.94 in deductible payments pursuant to

---

[7] *Liberty Mutual* specifically addresses the burden of proof in a contested workers compensation retrospective premium policy, whereby premiums are calculated after the fact, based upon claims and losses during the period of coverage. Because the indemnification agreement here involves the same type of *post hoc* reimbursement as in that case, the court believes *Liberty Mutual*'s reasoning to be similarly applicable.

the Policy and that Culi breached its contractual obligations by failing to reimburse Federal for these payments. Accordingly, Federal is entitled to summary judgment on its claim for unpaid deductible reimbursements.

**B.  Pending Deductible Payments**

Federal also seeks $45,000.00 in pending deductible payments, based on estimates of "future unpaid deductible reimbursements," as calculated by a "standard internal formula." Pl.'s Mot. at 7. Because the Agreement provides for reimbursement of deductible payments made by Federal on behalf of Culi, Pl.'s Mot., Ex. D at 1, but does not provide any mechanism for prospective reimbursement, Federal's claim for pending deductible payments must be denied. Culi's duty to reimburse does not accrue until payments have been made on its behalf. *Id.* ("Culi agrees to reimburse and pay [Federal] for all sums [Federal] pays within the Policy's deductible"). Therefore, there is no basis on which this court may award reimbursement for future debts that may never materialize.

**C.  Unpaid Premium Payments**

Federal also presents competent evidence that Culi failed to pay $134,544.60 in required premium payments under the Policy. *See, e.g.*, Pl.'s Mot., Ex. L (Premium Audit Statement); *id.*, Ex. M (Declaration of Denise Traina). Culi presents no argument or evidence to dispute this claim. Consequently, because there is no genuine dispute of material fact, Federal is entitled to summary judgment on its claims for unpaid premium payments.

**D.  Attorney's Fees**

Federal avers that it incurred $37,793.00 in attorney's fees and costs in connection with this litigation as of the date of the filing of its motion for summary judgment and seeks recovery

of these costs. *See* Pl.'s Mot., Ex. N (Declaration of Wallace A. Christensen). Although New Jersey has a strong policy disfavoring fee-shifting, "a party may agree by contract to pay attorneys' fees." *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848 (N.J. 1999). Here, Culi so agreed. The Agreement explicitly provides that "Culi agrees to pay all attorney's fees, court costs and other expenses incurred by [Federal] in enforcing the terms of this Agreement." Pl.'s Mot., Ex. D, at 1. As Culi disputes neither that they are required to pay Federal's attorney's fees and costs nor that those charges are reasonable, the court grants summary judgment as to Federal's claim for attorney's fees and costs.

### III.  CONCLUSION

For the foregoing reasons, it is this 21st day of March, 2006, hereby

**ORDERED** that Federal's motion for summary judgment [#18] is granted in part and denied in part as set forth in this Memorandum Opinion.

Henry H. Kennedy, Jr.
United States District Judge